# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARSHA L. GILLESPIE,**

        **Plaintiff,**            **CIVIL ACTION NO. 09-cv-11191**

    **vs.**

                   **DISTRICT JUDGE DAVID M. LAWSON**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**I.**   **RECOMMENDATION:**   Defendant's Motion For Voluntary Remand To The Commissioner (docket no. 17) should be GRANTED, Plaintiff's Motion For Summary Judgment GRANTED in part (docket no. 12) and the instant case remanded[1].

                        \*\*\*

**II.**   **REPORT**

       Plaintiff filed an application for disability and Disability Insurance Benefits on March 1, 2004, alleging that she had been disabled and unable to work since December 8, 2001 due to back surgery and pain. (TR 36, 68, 86, 88). The Social Security Administration initially denied her claim. (TR 63-68). Following a May 16, 2005 hearing, Administrative Law Judge Regina Sobrino (ALJ) found that Plaintiff was entitled to a closed period of disability from December 8, 2001 and ending with the close of October 29, 2003. (TR 60). The Appeals Council reviewed the ALJ's

---

[1] Plaintiff asks only that the case be remanded for an award of benefits pursuant to 42 U.S.C. § 405(g). In this instance, however, a reversal and remand for further proceedings, not simply an award of benefits, is appropriate where not all essential factual issues have been resolved. *See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

decision and remanded for further proceedings and consideration with the ALJ. (TR 43-46). On remand the ALJ held a hearing on October 17, 2007. (TR 17, 333). In a decision dated February 9, 2008 the ALJ concluded that Plaintiff is entitled to a closed period of disability commencing on December 8, 2001 and ending on October 30, 2003. (TR 27). The Appeals Council denied Plaintiff's request for review. (TR 6-8). Plaintiff commenced the instant action for judicial review. Plaintiff filed a Motion for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record. (Docket no. 12). Defendant filed a Motion for Voluntary Remand To The Commissioner. (Docket no. 17). Plaintiff filed a Reply, functioning as a response to Defendant's Motion to Remand. (TR 18).

This matter was referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 2).

### III.  MOTION TO REMAND

Defendant moves to remand this case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (Docket no. 17). Defendant points out that the ALJ's hypothetical question to the Vocational Expert (VE), upon which the ALJ relied in making his findings at step five of the disability determination, did not contain all of the limitations of the ALJ's residual functional capacity (RFC) finding. *See* 20 C.F.R. 404.1520(g). Specifically, the ALJ did not include his finding that Plaintiff could only occasionally stand or walk on cement floors more than momentarily. (Docket no. 17).

There are two methods by which the District Court can remand a case to the Commissioner. The first is pursuant to sentence four of 42 U.S.C. § 405(g), which provides that the court has the

power to enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." *See* 42 U.S.C. § 405(g); *see also Finch v. Apfel*, 993 F. Supp. 712, 713 (E.D. Mo. 1998). The second method for remand is pursuant to sentence six of 42 U.S.C. 405(g) which provides that "[t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner . . . ." 42 U.S.C. § 405(g). Defendant has already filed an answer to Plaintiff's complaint and does not argue that there is new evidence to be considered on remand. Therefore a sentence four remand is appropriate.

The court notes here the unusual distinction in this case where Plaintiff *opposes* Defendant's motion for remand. Plaintiff argues that remand is appropriate in this matter solely for an award of benefits because "proof of disability is strong and evidence to the contrary is lacking." (Docket no. 18, *citing Faucher*, 17 F.3d 171). Plaintiff challenges whether the ALJ's decision is supported by substantial evidence other than, and including, the ALJ's failure at step five. For this reason, the Court finds persuasive the language of *Finch v. Apfel*, that "a court may remand under sentence four only if it first makes a 'substantive' ruling on the correctness of the administrative decision." *Finch*, 993 F. Supp. at 713; *compare Guidry v. Barnhart*, 2006 WL 2583312 (M.D. La. May 30, 2006) (where Defendant filed motion for remand before filing an answer and claimant did not oppose motion for remand, remand granted pursuant to sentence six). Plaintiff opposes Defendant's motion to remand and Defendant's motion does not identify all of the infirmities which Plaintiff identifies in her motion for summary judgment. For these reasons the Court should grant Defendant's Motion For Voluntary Remand with respect to the issues raised by the ALJ's step five findings and the Court

will otherwise engage in a review of the record and the issues raised by Plaintiff's Motion For Summary Judgment[2] as set forth below.

## IV.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.    Plaintiff's Testimony and Report

Plaintiff was forty-four years old at the time of the 2005 hearing.  (TR 309).  Plaintiff has a high school equivalent education and more than three years of college education.  (TR 309).  She has work experience as a correctional officer.  (TR 310).  She had unsuccessful work attempts in April through May of 2002 and September to October 2002 at her prior work facility in different positions.  (TR 309-10).  She stopped working prior to June 2002 to undergo a pre-surgery operation and a laminectomy infusion at L3-4 and L4-5.  (TR 311).  She stopped working again in October 2002 due to pain.  (TR 311).  Plaintiff described constant throbbing pain across her lower back and down her right leg to her foot.  (TR 345).  She has numbness in two toes on the right foot.  (TR 345).  She also has pain down the left leg, less severe than the right.

Plaintiff testified that she is in pain 24 hours per day and takes narcotics.  She alternates sitting with standing and walking in ten minute intervals.  (TR 312, 337-38).  She lies down approximately three times during an eight-hour day for 45 minutes each time to relieve back pain.  (TR 345-46).  She uses a walking stick when walking outside.  (TR 313).  Plaintiff needs to use both

---

[2] Defendant makes the unsupported assertion that its "attorney consulted with the Appeals Council, who agreed to voluntarily remand the case to the Agency for further consideration."  The assertion alone is not persuasive in light of Plaintiff's objection to the Motion to Remand.  *See Malone v. Astrue*, 2009 WL 2030369 (S.D. Fla. July 13, 2009) (reversing the ALJ's decision and granting a sentence four remand where the plaintiff did not object to the motion to remand and the Appeals Council agreed to reconsider the ALJ's underlying decision).

hands to lift a gallon of milk. (TR 313). Her hands shake, which she attributes to her medication, but she is able to write. (TR 338). Plaintiff has pain with reaching over her head, reaching out and bending at the waist and has trouble getting up from a squatting position. (TR 314, 339). Plaintiff has pain with going up and down stairs, which increased between the 2005 and 2007 hearings. (TR 339). At the time of the 2005 hearing Plaintiff lived with her mother. (TR 337). Plaintiff did her own laundry and dusting and her mother cooked, cleaned and did the dishes. (TR 315). At the time of the 2007 hearing Plaintiff lived alone and prepared simple meals, including warming up soup and making sandwiches. (TR 339). Her daughter does the majority of her grocery shopping, but Plaintiff is able to get small items at a nearby store. (TR 339).

Plaintiff visits with relatives and friends. (TR 316, 340). She used to sew but has not worked on a project since July 2005 due to pain in her thumbs. (TR 316, 340). She is able to bathe and dress herself without trouble. (TR 316). She is able to drive and usually goes to her sister's house five miles away. (TR 317). She has pain in her leg with driving longer distances and her sister drove her to the hearing. (TR 317). At the time of the 2005 hearing Plaintiff testified that she was taking OxyContin, Mobic, Valtrex, Flovent and Albuterol. (TR 319). She testified that she was tired and felt like she was in "a drugged state all the time" from the OxyContin and that she could not stay awake all day. (TR 319, 321). Plaintiff testified that despite a note indicating that she was responding well to the OxyContin, it was not working as well due to further disc problems, but Plaintiff did not want her doctor to prescribe anything stronger due to the "drugged up" feeling. (TR 320). Plaintiff testified that despite problems with another disk, she does not want to undergo another surgery. (TR 320).

At the 2007 hearing Plaintiff testified that her medications included methadone, Valtrex,

Flovent, Albuterol, Diazepam, Maxalt and Motrin. (TR 342). She testified that the side effects included seeing "spiders," and having trouble concentrating and trouble remembering, including forgetting her medication. (TR 342). Plaintiff testified that she has suffered migraines since her surgery, occurring more than once a week. (TR 347). She sleeps a maximum of four hours per night because her pain awakens her. (TR 347-48).

### B. Medical Evidence

The ALJ issued a partially favorable decision finding that Plaintiff was disabled from December 8, 2001 through October 29, 2003 and that finding was not challenged on appeal. Therefore, although the Court has reviewed the record in full, it will narrow its discussion herein to medical records related to an overview of Plaintiff's conditions, her conditions and impairments after the disability period and those records relating to the ALJ's finding of medical improvement as of October 30, 2003, set forth in the analysis below.

Plaintiff began treating with Kimberly Hanert, D.O., in December 2001 for complaints of back pain, leg pain and leg weakness. (TR 129). Further medical records of Dr. Hanert are set forth in detail in the analysis below. On May 7, 2002 Plaintiff underwent EMG and nerve conduction studies which were normal. (TR 140-41). An MRI and x-ray revealed a broad-based disk with herniation to the right at L3-4 and degenerative disk disease at L3-4 and L4-5. (TR 152-55). On June 17, 2002 Plaintiff underwent a decompressive laminectomy with BAK cage and pedicle screw fixation and fusion at L3-4 and L4-5 performed by John M. Cilluffo, M.D. (TR 152, 171). Following her surgery, Dr. Cilluffo restricted Plaintiff to lifting no greater than twenty-five pounds and no participation in pain-inducing activities. (TR 168-69).

On June 21, 2002 Dr. Cilluffo reported that Plaintiff did well post-operatively, her leg pain

was improved and "her back pain was not too bad, but she did have a headache from a small dural leak that occurred during surgery." (TR 171). In July 2002 Plaintiff underwent a brain MRI following complaints of headaches, which began after the surgery. (TR 157, 162, 165). The MRI was normal. On July 23, 2002 the doctor noted that Plaintiff's "headaches are now gone." (TR 163). Medical expert Dr. Mary Jo Voelper testified at the 2007 hearing. (TR 333, 348). Dr. Voelper testified that Plaintiff had two categories of impairments that potentially affected functional capability, the respiratory category and the musculoskeletal system with the prior injury to the back, but they did not meet or equal a listed impairment[3]. *See* 20 C.F.R. § 404.1520. (TR 353-54). The doctor noted "documented evidence of restriction based on ongoing pain locally from the arthritic problems and the use of methadone over a number of years." (TR 353). She noted that the are "clearly functional limitations based on the medical evidence that would limit functioning based on the medications that the claimant is on regarding control of the pain, such as the hallucinations and the fatigue related to methadone therapy." (TR 354). She also testified that the "ability to maintain attention and concentration because of the high levels of narcotics that the claimant is currently taking would be the primary categories of restriction of function." (TR 355).

She noted that Plaintiff's gait is "normal," "walking did not appear to be a problem" and that the concern was with balance, crouching, crawling and climbing of stairs due to degenerative changes in the back. (TR 354). The doctor concluded that Plaintiff had the ability to walk for five to six hours during an eight-hour workday with rest periods, ability to stand and sit for fifteen

---

[3] Plaintiff does not challenge the ALJ's findings related to her asthma and the ALJ pointed that Plaintiff had wheezing on examination in 2007 but was not dyspneic. (TR 21). The medical expert testified that Plaintiff had "no pulmonary function studies or ongoing medication or frequent visits to the primary care doctor that would indicate a problem in the respiratory listing." (TR 353).

minutes to a half-hour at a time, and that Dr. Cilluffo's prior 2002 lifting restriction to no more than 25 pounds was still appropriate. (TR 356). In response to questioning by Plaintiff's attorney, Dr. Voelper agreed that the ten-pound weight restriction assigned in January 2007 by the consultative examiner was "probably" more appropriate than the twenty-five pound restriction. (TR 359).

Dr. Voelper concluded that from December 2001 through the 2007 hearing date, there was no significant change in limitations and Plaintiff had some stabilization from the 2002 surgery which "has created a significant improvement." (TR 357). She called the surgery "somewhat successful" from the standpoint of stabilizing the back to prevent progressive problems such as paralysis. (TR 357). She testified that the arthritic problems shown on the MRI scan would be ongoing and degenerative changes were "just part of the aging process." (TR 357). The doctor testified that scar tissue and possible lumbar stenosis were expected post-operative changes but agreed that either one could cause severe pain. (TR 360). The doctor noted that there were discrepancies a number of times in the record, for example, one examination was "normal," and another showed weakness. (TR 364). The doctor could not discern whether this was something intermittent based on pain or inflammation. (TR 364). The doctor explained that "[i]f indeed there are changes in which there is nerve entrapment and irritation, there is an ongoing physical change that occurs in the muscle and that would be noted and I couldn't pick up any consistent progression other then (sic) one test was normal and one, one was abnormal." (TR 364).

### C.     Vocational Expert Testimony

The Vocational Expert (VE) agreed that Plaintiff's past work as a corrections officer was heavy, semi-skilled work with skills specific to the job and work as a bartender and waitress was medium to heavy as Plaintiff performed it and unskilled to semi-skilled with skills specific to the

job. (TR 367). The ALJ asked the VE to consider an individual of Plaintiff's age, past work experience and with a high school equivalent education, who is limited to lifting, carrying, pushing or pulling no more than five pounds frequently and twenty pounds occasionally, able to stand and/or walk about six hours in an eight-hour workday and sit up to eight hours in an eight-hour workday alternating sitting and standing at will, with no climbing of ladders, ropes or scaffolds, no crawling, no exposure to hazards or vibration, no operation of foot or leg controls, no concentrated exposure to fumes or dust, no exposure to extremes of temperature or humidity, no need to drive as a work duty, limited to only occasional balancing and crouching and stooping less than one third of a workday, and limited to doing simple, routine work. (TR 368).

The VE testified that such an individual could not perform Plaintiff's past work. (TR 368). Such an individual could perform jobs in the sedentary category such as surveillance system monitor (1,500 jobs in the region defined as the lower peninsula of Michigan), information clerk (13,000 jobs in the region) and telemarketer (5,000 jobs in the region). (TR 368). The VE testified that the jobs are unskilled pursuant to the Dictionary of Occupational Titles (DOT) and as sedentary jobs, they do not require lifting, carrying, pushing or pulling more than ten pounds. (TR 369). The VE testified that her testimony was consistent with the DOT. (TR 369).

## V.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since December 8, 2001, the alleged onset date, met the insured status requirements of the Social Security Act as of December 8, 2001 and suffered from degenerative disc disease, degenerative joint disease, asthma and a history of migraine headaches, she does not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments. (TR 20-21). The ALJ found

that from December 8, 2001 through October 29, 2003 Plaintiff had a residual functional capacity which did not allow for the performance of past relevant work, there were no jobs that existed in significant numbers in the national economy which Plaintiff could have performed and Plaintiff was under a disability from December 8, 2001 through October 29, 2003. (TR 22-23). The ALJ found that medical improvement occurred as of October 30, 2003 and Plaintiff had the ability to perform a limited range of sedentary and light work. (TR 24-27). The ALJ concluded that as of October 30, 2003 Plaintiff was able to perform jobs that exist in a significant number in the national economy. (TR 27).

## VI.   LAW AND ANALYSIS

### A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B. Analysis**

*1. Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f) (2009). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id*. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform

specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ's decision that Plaintiff showed medical improvement as of October 30, 2003 is not supported by substantial evidence. Second, the ALJ failed to give controlling weight to the opinions of treating physician Dr. Hanert and finally, the ALJ's decision at step five was not supported by substantial evidence. (Docket no. 10). As set forth in Defendant's Motion For Voluntary Remand, Defendant concedes that the ALJ's decision at step five is not supported by substantial evidence.

## 2.    *Whether The ALJ's Finding of Improvement is Supported by Substantial Evidence*

Plaintiff argues that the ALJ's finding of medical improvement as of October 30, 2003 is not supported by substantial evidence. "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *See Shepherd v. Apfel*, 184 F.3d 1196 n. 2 (10th Cir. 1999). "Typically, both the disability decision and the cessation decision [in a closed period case] are rendered in the same document." *Id.* The medical improvement standard applies to cases involving a closed period of disability. *Id.; Niemasz v. Barnhart*, 155 Fed. Appx. 836, 839-40 (6th Cir. 2005). Once a claimant has been awarded disability benefits, an ALJ must find that there has been a medical improvement in the beneficiary's condition before terminating the claimant's benefits. Title 42 U.S.C. § 423(f) provides:

> A recipient of benefits under this subchapter . . . based on the
> disability of any individual may be determined not to be entitled to

such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by –

(1) substantial evidence which demonstrates that –

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity;

42 U.S.C. § 423(f)(1). Any improvement in the beneficiary's impairment meets the statutory standard for medical improvement. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(c)(1).

"To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled." *Shepherd*, 184 F.3d at 1201. "Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision." *Id.*

To support the finding that Plaintiff underwent medical improvement as of October 30, 2003, the ALJ cited a variety evidence, including Plaintiff's testimony and medical opinions, from throughout the time period from 2002 through January 2007. (TR 25-26). The only evidence the ALJ cites which is directly related to the October 30, 2003 end date of disability is Dr. Hanert's October 30, 2003 treatment note. (TR 25). The ALJ stated that "[t]he claimant continues to be treated with narcotic pain medication. According to treatment notes, in October 2003 the claimant

reported that she had constant leg pain but was doing well on Oxycontin and hydrocodone . . . . Medication side effects not mentioned." (TR 25). The ALJ concluded that "the record as a whole indicates that since October 30, 2003 the claimant's symptoms have been adequately controlled with medication. Serious medication side effects are not documented in the treatment records." (TR 26).

The ALJ is correct that medication side effects were not mentioned in the October 30 notes. Plaintiff on the same date, however, continued to complain of constant pain and rated her pain in the lower back and legs at a 4 to 5 on a pain scale. (TR 200). Dr. Hanert's note, on which the ALJ relies, states "[d]oing well on OxyContin bid with good relief. Only using Hydrocodone prn breakthrough pain contract; RLE > LLE." (TR 200). There is no evidence that Dr. Hanert's notes on October 23, 2003 are based on objective findings and no related objective findings are noted. They appear to be based upon Plaintiff's self-report of the effect of the OxyContin. The notes show continuous reports of pain, including in the right lower extremity (RLE) greater than the left lower extremity (LLE). There is no explanation of what "doing well" on OxyContin means, whether it refers to decreased pain in the back or legs, decreased side effects from the medication, or an actual medical improvement in her symptoms. "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment." 20 C.F.R. § 404.1594 (b)(1). The ALJ's findings related to the October 30, 2003 date do not identify a change in a symptom, sign or laboratory finding which shows improvement. The ALJ's finding that Plaintiff improved as of October 30, 2003 is not supported by substantial evidence.

Furthermore, the isolated notation that Plaintiff was "[d]oing well on OxyContin bid with good relief" is not supported by complaints of pain and medication treatment after that date. As

-14-

Plaintiff pointed out in her brief, examination reports following October 30, 2003 show Plaintiff continued to complain of pain. In May 2004 Dr. Hanert noted that Plaintiff's pain was controlled during the day with OxyContin, but was exacerbated in the afternoon. (TR 226). In August 2004 Dr. Hanert noted that Plaintiff's back pain was "stable on OxyContin," which she was using 3-4 times per day, yet her pain worsened with activity and was exacerbated by riding in a car. (TR 224). Plaintiff's need for OxyContin 3-4 times per day was also noted in December 2004. (TR 236, 244). Despite the ALJ's conclusion that Plaintiff was responding well to OxyContin, evidencing medical improvement, the ALJ also pointed out that Plaintiff continued to be treated with methadone. (TR 21). Dr. Hanert's notes from June 2005 indicate that Plaintiff had decreased pain on Mobic and was sleeping better, but by November 2005 the doctor noted that Plaintiff's back pain was "not well controlled" on methadone and Plaintiff had suffered weight gain. (TR 269, 271). In January 2007 Dr. Hanert reported that Plaintiff had increased fatigue, her back pain was worse with increased fatigue and she had increased radiation of pain into her legs. (TR 295).

To the extent the ALJ cites to evidence post-dating October 30, 2003, this evidence alone is not substantial evidence of improvement as of October 30, 2003. *See Shepherd*, 184 F.3d at 1201-02 (ALJ relied on examinations occurring in 1993 and 1994 to show that claimant's disability ended on December 31, 1992 and the court concluded that there was "no evidence in the record of medical improvement, . . . substantiated by changes in signs, symptoms, or laboratory findings, which took place by December 31, 1992, sufficient to support a conclusion that disability had ceased."). The ALJ pointed out that R. Scott Lazzara, M.D., evaluated Plaintiff in June 2004 and January 2007. Dr. Lazzara noted that Plaintiff's findings appeared "to show facet arthropathy and post surgical scar tissue formation," however, he could not rule out lumbar stenosis. (TR 213). He noted that her

fusion appeared to be very successful and her "diminished range of motion was due to her surgery." (TR 213). As the ALJ points out, in June 2004 Dr. Lazzara reported that Plaintiff should avoid repetitious bending, lifting over thirty pounds and repetitious twisting "to avoid exacerbation of disease." (TR 214). The doctor reported that Plaintiff "may require further surgical intervention in the future," however, she "currently appears to be stable overall." (TR 214).

In January 2007 Dr. Lazzara again examined Plaintiff and concluded that she could lift and/or carry twenty pounds occasionally and less than ten pounds frequently, stand and/or walk about six hours in an eight-hour day and must periodically alternate sitting and standing. (TR 290-91). The ALJ concluded that Dr. Lazzara's January 2007 findings were "generally consistent" with the state agency consultant's July 2004 review of the record. (TR 25). On July 15, 2004 the state agency consultant concluded that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. (TR 216). While these opinions may support the ALJ's finding with respect to the RFC, they are not substantial evidence that Plaintiff's disability ceased on October 30, 2003. As Plaintiff points out, Dr. Lazzara himself noted a decrease in the weight which Plaintiff was able to lift between the time of his 2004 examination (avoid lifting over thirty pounds) and his 2007 examination (lift and/or carry twenty pounds occasionally and ten pounds frequently). (TR 214, 216). To the extent that evaluating and examining doctors have opined that Plaintiff is "stable," there is no indication that such a state is the equivalent of having attained an "improvement." The ALJ's finding of medical improvement as of October 30, 2003 is not supported by substantial evidence. The Court should remand the matter for further development of this factual matter.

### *3.* *Whether the ALJ Gave Proper Weight To The Treating Physician*

Plaintiff argues that the ALJ failed to give controlling weight to her treating physician's September 16, 2004 medical opinion. (TR 228-234). It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. section 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. The ALJ must give specific reasons for the weight given to a treating source's opinion. SSR 96-2p; 1996 WL 374188. "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e).

Dr. Hanert completed a check box form dated September 16, 2004 in which she opined that Plaintiff suffered from lumbar spine impairment with bilateral lower extremity pain and numbness and right lower extremity paresthesis. (TR 228-34). The doctor opined that Plaintiff continued to have limitation of motion in the spine and muscle weakness despite therapies and treatment. (TR 228). The doctor agreed that Plaintiff's symptomatology was "consistent with the medical findings" and that her symptoms and limitations have "existed at the same or similar degree of severity" since June 17, 2002. (TR 231). She opined that Plaintiff's pain interferes with her "ability to maintain attention and concentration to sufficiently complete tasks in a timely manner" for between 34-66%

of the time and that Plaintiff "requires complete freedom to rest frequently without restriction." (TR 233). The doctor concluded that Plaintiff is "incapable of sedentary work on a sustained and full-time basis." (TR 234).

The ALJ pointed out that in September 2004, March 2006 and April 2007 Dr. Hanert opined that Plaintiff was disabled and incapable of performing sedentary work. (TR 26). The ALJ correctly pointed out that Plaintiff's RFC and the determination of disability is an issue reserved to the Commissioner. (TR 26). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001). The ALJ then makes the general statement that Dr. Hanert's opinion "is not supported by other substantial evidence of record, including clinical examinations, the reports of other examining and treating sources, and the medical expert testimony." (TR 26). The ALJ has not, however, explained whether he discounted Dr. Hanert's opinion that Plaintiff needed to rest frequently without restriction and that pain would interfere with her ability to maintain attention and concentration from 34 to 66% of the time. (TR 232, 233). Both of these limitations are relevant to whether Plaintiff can perform jobs available in the economy. (TR 369-70). The ALJ has not shown contradictory evidence in the record.

As Plaintiff points out, the medical expert stated that he would not dispute the treating physician's opinion that it would be necessary for Plaintiff to lie down during the day frequently and at her discretion. (TR 363). The expert also testified that the scar tissue and possible stenosis, which were evidence from the August 2002 x-rays, could both cause severe pain. (TR 192-93, 213, 359-360). The expert testified that "there is documented evidence of restrictions based on ongoing pain locally from the arthritic problems and the use of methadone over a number of years." (TR

353).  He also noted that there "are clearly functional limitations based on the medical evidence that would limit functioning based on the medications that the claimant is on regarding control of the pain, such as the hallucinations and fatigue related to methadone therapy." (TR 354).  The expert's testimony does not contradict Dr. Hanert's testimony that Plaintiff needs the "freedom to rest frequently without restriction" and that her pain interferes with her attention and concentration.  The ALJ has not given specific reasons for discounting Dr. Hanert's opinion and her findings in this respect are not supported by substantial evidence.

### 4.    *Whether the ALJ's Findings at Step Five are Supported By Substantial Evidence*

As set forth above, at step five, the Commissioner has the burden of showing that there is work available in the economy which Plaintiff can perform and the finding must be supported by substantial evidence.  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779.  In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993).  Defendant in its motion to remand concedes that the hypothetical question to the VE did not contain all of the limitations set forth in the ALJ's RFC, including the limitation that Plaintiff should "not need to stand or walk on cement floors more than momentarily." (TR 24).  Plaintiff agrees that the Commissioner failed to meet his burden of proof on this issue.  The ALJ's findings at step five are not supported by substantial evidence and the case should be remanded for further findings on this issue, if applicable, after the ALJ makes findings related to whether Plaintiff has had medical improvement.

## VII.    CONCLUSION

The ALJ's opinion is not supported by substantial evidence.  Defendant's Motion For Voluntary Remand To The Commissioner (docket no. 17) should be GRANTED, Plaintiff's Motion For Summary Judgment (docket no. 12) should be GRANTED IN PART and the case remanded pursuant to step four of 42 U.S.C. § 405(g) for further proceedings as set forth herein.

## REVIEW OF REPORT AND RECOMMENDATION:

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


Dated: February 18, 2010         s/ Mona K. Majzoub
                                      MONA K. MAJZOUB
                                      UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 18, 2010         s/ Lisa C. Bartlett
                                        Case Manager